FILED

01 JAN 30 AM 10: 15

U.S. DISTRICT COURT
N.D. OF ALABAMA

**United States District Court**
**Northern District of Alabama**
**Western Division**

| | | |
|---|---|---|
| Eloise Dickerson, et. al., | ] | |
| | ] | |
| Plaintiff(s), | ] | |
| | ] | |
| vs. | ] | CV-00-N-2281-W |
| | ] | |
| Alexander Hamilton Life Insurance | ] | |
| Company of America, Dean A. | ] | |
| Gambrell, Sr., and Gambrell | ] | **ENTERED** |
| Financial Group, Inc., et. al., | ] | |
| | ] | JAN 30 2001 |
| Defendant(s). | ] | |

**Memorandum of Opinion**

### I. Introduction

In the present action, Eloise Dickerson and others similarly situated (collectively, the "plaintiffs"), bring various state law claims against defendants Alexander Hamilton Life Ins. Co. ("Alexander Hamilton"), Dean A. Gambrell Sr. ("Gambrell") and Gambrell Financial Group, Inc. ("Gambrell Financial"). This action was originally brought in the Circuit Court of Pickens County, Alabama, and removed to this court on August 16, 2000 (Doc. No. 1). In their joint Notice of Removal, defendants assert that the universal life insurance plan at issue is part of an "employer benefit plan" within the meaning of 29 U.S.C. § 1001, *et seq.* ("ERISA") and, pursuant to ERISA's "super preemption" provisions, plaintiffs' state law claims are converted into federal questions. The action is presently before the court on plaintiffs' Motion to Remand (Doc. No. 7), filed on September 11, 2000. The motion has been fully briefed; the parties were afforded an opportunity for oral argument, though they did not



take advantage of that opportunity; and it is ripe for decision. Upon due consideration, the Motion to Remand will be **DENIED**.

## II. Statement of Facts

The plaintiffs, employees of the Pickens Community Action Committee ("PCAC"), are participants in PCAC's Defined Contribution and Prototype Plan ("Prototype Plan"). Pursuant to certain provisions of the Prototype Plan, participants are permitted, if they so choose, to use of portion of their voluntary contributions to purchase an incidental life insurance benefit. (Def. Ex. 3, "Prototype Plan" at ¶ 11.01). After meeting with defendant Gambrell, plaintiffs opted to participate in the insurance program. The plaintiffs contend that defendant Gambrell described the Alexander Hamilton policy as a tax free "retirement plan" that would provide both death and disability benefits. According to plaintiffs, however, the "retirement plan" they purchased is actually a simple flexible premium life insurance policy. As a result, plaintiffs seek damages for breach of contract, fraud/suppression, conspiracy and recklessness. (Complaint at ¶¶ 14-37).

## III. Motion to Remand Standard

Federal courts are courts of limited jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994); *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994). Therefore, they have only the power to hear cases that they have been authorized to hear by the Constitution and Congress of the United States. *See Kokkonen*, 511 U.S. at 377. Because federal jurisdiction is limited, the removal statute, 28 U.S.C. § 1441 *et seq.*, must be strictly construed against removal and any doubts should be resolved in favor of remand. *Burns*, 31 F.3d at 1095.

## IV. Discussion

The removal of an action to federal court is proper only if the action originally could have been brought in federal court. *See* 28 U.S.C. § 1441(a). Since there is no basis for diversity jurisdiction in the present matter, whether defendants properly removed this action turns on the existence of a federal question, that is, whether plaintiffs' claims arise under the Constitution, laws, or treaties of the United States. *See* 28 U.S.C. § 1331. In determining whether a federal question exists, district courts are instructed to look to the face of the plaintiff's complaint, rather than to the defenses asserted by the defendant. *See Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392, 107 S. Ct. 2425, 96 L. Ed. 2d. 318 (1987). The well-pleaded complaint rule is qualified, however, by the doctrine of "super preemption."[1] *Whitt v. Sherman Int'l Corp.*, 147 F.3d 1325, 1329 (11th Cir. 1998). As stated in *Whitt*, "[w]here Congress preempts an area of law so completely that any complaint raising claims in that area is necessarily federal in character, super preemption applies, and federal jurisdiction exists, even if the face of the complaint does not plead federal claims." *Id.* (citations omitted).

The Supreme Court has recognized that the comprehensive remedial scheme established in 29 U.S.C. § 1132 for loss or denial of employee benefits is one area where Congress intended to provide for super preemption. *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 64-67, 107 S. Ct. 1542, 95 L. Ed. 2d 55 (1987). Thus, when the plaintiff is seeking relief that is available under 29 U.S.C. § 1132(a), "regardless of the merits of plaintiff's actual claims (recast as ERISA claims), relief is available, and there is complete preemption, when

---

[1] Or as some have called it, "super dooper preemption."

3

four elements are satisfied." *Butero v. Royal Maccabees Life Ins. Co.*, 174 F.3d 1207, 1212 (11th Cir. 1999). Those four elements, according to *Butero*, are as follows: (1) there must be a relevant ERISA plan; (2) the plaintiff(s) must have standing to sue under the plan; (3) the defendant(s) must be an ERISA entity; and (4) the complaint must seek compensatory relief akin to that available under 29 U.S.C. § 1132(a). *Id*. Plaintiffs take the position that elements (1), (3), and (4) are lacking and, therefore, remand is appropriate. Each of plaintiffs' contentions will be addressed in turn.

### A. Is PCAC's Retirement Plan an "ERISA Plan"?

As noted above, in order for super preemption to be applicable, the removing party must first establish the existence of a valid ERISA employee benefit plan. *See* 29 U.S.C. § 1003(a); *see Fuller v. Ulland*, 76 F.3d 957, 960 (8th Cir. 1996). ERISA governs two types of employee benefit plans, "employee welfare benefit plans"[2] and "employee pension benefit plans."[3] *See* 29 U.S.C. § 1002. In the present matter, plaintiffs do not dispute that PCAC's

---

[2] An "employee welfare pension benefit plan" is defined, in pertinent part, as:

> any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, . . . medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, day care centers, scholarship funds, or prepaid legal services. . . .

29 U.S.C. § 1002(1); *see also Donovan v. Dillingham*, 688 F.2d 1367, 1371 (11th Cir. 1982).

[3] An "employee pension benefit plan" is defined, in pertinent part, as:

> any plan, fund, or program . . . established or maintained by an employer . . . to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program -
> (i) provides retirement income to employees. . . .

29 U.S.C. § 1002(2)(A).

"Prototype Plan" satisfies the criteria required for either a welfare plan or pension plan.[4] Rather, plaintiffs take the position that the PCAC's plan is a "government plan" and, as such, is excluded from the scope of ERISA.[5]

Even if a plan qualifies as an employee benefit plan under ERISA, the plan can nevertheless evade ERISA's broad coverage if it is statutorily exempt. *See* 29 U.S.C. 1003(b). ERISA specifically exempts five categories of employee benefit plans: (1) governmental plans; (2) church plans; (3) plans established solely for complying with workers' or unemployment compensation or disability insurance laws; (4) plans maintained outside the United States primarily for nonresident aliens; and (5) unfunded excess benefits plans. 29 U.S.C. § 1003(b)(1)-(5). A "governmental plan" is defined as follows: "A plan established or maintained for its employees by the Government of the United States, by the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing . . . ." 29 U.S.C. § 1002(32). Since the employee benefit plan under which the plaintiffs are covered was established by the PCAC, the question before the court is whether the PCAC is a governmental "agency or instrumentality" for purposes of ERISA's "governmental plan" exemption.

---

[4] In fact, a close examination of PCAC's Prototype Plan reveals both a pension component as well as an optional welfare component. (Def. Ex. 2); *see* 29 U.S.C. § 1002(3) (defining term "employee benefit plan" to encompass "a plan which is both an employee welfare benefit plan and an employee pension benefit plan").

[5] Plaintiffs additionally argue that their claims made pursuant to Ala. Code § 27-14-9 are exempt from ERISA due to the ERISA savings clause found in 29 U.S.C. § 1144(b)(2)(A). *See* 29 U.S.C. § 1144(b)(2)(A) ("nothing in this sub-chapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance . . ."). Alabama Code § 27-14-9 provides that "every policy shall be mailed or delivered to the insured or the person entitled thereto within a reasonable time after its issuance. . . .". The court finds plaintiffs' argument is without merit for two reasons. First, as defendants point out, the record clearly indicates that the holder and beneficiary of the policy is the PCAC, not the plaintiffs. Second, assuming plaintiffs were entitled to receive a copy of the policy, Ala. Code § 27-14-9 is not a law "which regulates insurance." *See Willett v. Blue Cross Blue Shield of Ala.*, 953 F.2d 1335, n. 6 (11th Cir. 1992) (applying complex balancing test in determining that similar insurance notice requirement did not regulate insurance because the requirement did not have the effect of transferring the policyholder's risk or constitute an "integral relationship between the insurer and the insured").

5

Because the terms "agency" and "instrumentality" are not defined in ERISA, courts have often looked to the provisions of the Internal Revenue Code for guidance. *See Culpepper v. Protective Life Ins. Co.*, 938 F. Supp. 794, 797 (M.D. Ala. 1996) (citing *Rose v. Long Island R. Pension Plan*, 828 F.2d 910, 916 (2d Cir. 1987)). The Revenue Ruling accompanying the Internal Revenue Service's definition of "governmental plan," a definition which is virtually identical to the definition provided in ERISA, takes into consideration six factors in determining whether an entity qualifies an a government agency or instrumentality:

(1) whether it is used for a governmental purpose and performs a governmental function;

(2) whether performance of its functions is on behalf of one or more states or political subdivisions;

(3) whether there are any private interests involved, or whether the states or political subdivisions involved have the powers and interests of an owner;

(4) whether control and supervision of the organization is vested in public authority or authorities;

(5) if express or implied statutory or other authority is necessary for the creation and/or use of such an instrumentality, and whether such authority exists; and

(6) the degree of financial autonomy and the source of its operating expenses.

Rev. Rul. 57-128, 1957-1 C.B. 311; *compare Alley v. Resolution Trust Corp.*, 984 F.2d 1201, 1205 (D.C. Cir. 1993) (declining to "engage in [the] all-purpose characterization" announced in *Rose*; court focuses attention on the entity's employment relationship with its employees, an area considered to be "most relevant for ERISA purposes").

The PCAC is a non-profit private corporation established under the provisions of the Alabama Non-Profit Corporation Act and whose activities and operating expenses are funded at both the federal and state level through the Community Service Block Grant Act, Section 671 of the Omnibus Budget Reconciliation Act of 1981. *See* Ala. Code § 10-3A-1, *et seq.*; § 11-96-1; (Def. Ex. 3, "Grant Agreement"). As a "community action agency" ("CAA"), the PCAC is charged with: (1) planning a systemic and effective community action program; (2) encouraging inter-agency cooperation; (3) initiating and sponsoring projects responsive to the needs of the poor not otherwise being met; (4) establishing effective procedures for the poor and area residents to influence the character of programs; and (5) encouraging participation of business, labor and other organizations. *See* Ala. Code § 11-96-3(g). According to the Alabama Code, these programs are to be administered through a governing board of directors which must include a certain number of elected or appointed public officials, certain democratically selected individuals, and certain community representatives. *Id.* at § 11-96-3(b). The PCAC's activities are subject to monitoring by the Alabama Department of Economic and Community Affairs ("ADECA"), and the PCAC is required to prepare periodic reports on fiscal operations. *Id.* at § 11-96-3(c); (Def. Ex. 3, "Grant Agreement" at ¶ 2). Notwithstanding the regulatory requirements set forth above, however, the PCAC is left with wide discretion in carrying on its day-to-day operations. In fact, the PCAC is under contract with the state and, if monitoring reveals the PCAC is not fulfilling its obligations under the contract, much like an independent contractor, the PCAC's funding is subject to reduction or termination. (Def. Ex. 3, "Grant Agreement" at ¶ 12).

Given the unique characteristics of Alabama CAA's, the *Rose* six-factor test is not particularly helpful in deciding whether the PCAC is an agency or instrumentality of the state. While a few factors apparently weigh in plaintiffs' favor (creature of statute, government funded, governmental type functions), the defendants can make a strong argument that the PCAC is a contractor for, rather than an agency of, the state of Alabama. In light of this impasse, the court turns to the virtually identical case of *Allen v. Nimrod Reynolds, et al.*, Civil Action No. CV-96-AR-1423-E, for guidance. As discussed below, based on the Secretary of the United States Department of Labor's ("Secretary") interpretation of the governmental plan exemption in *Allen*, the court concludes that the PCAC is not a governmental agency and, for this reason, the PCAC plan is not exempt from ERISA.

In *Allen*, Judge Acker requested that the Secretary express an opinion as to whether a retirement plan sponsored by the Community Action Agency of Calhoun, Cleburne, and Cherokee Counties, Inc., was subject to ERISA or exempt as a governmental plan. (*See* Memorandum in Response to Court's Inquiry, *Allen v. Nimrod Reynolds, et al.*, Civil Action NO. CV-96-AR-1423-E, Def. Ex. 6).[6] After applying factors similar to the *Rose* factors applied by this court, the Secretary advised the court that the CAA was a private, not a "governmental" employer. In reaching this decision, the Secretary reasoned:

> an employee benefit plan of an independent, nonprofit corporation for its employees is not considered a "governmental plan" when the sponsoring employer's only claim to "governmental status" consists in qualifying to receive virtually all its funding from government sources, primarily through

---

[6] Clarifications made by the Department of Labor, the agency given principal responsibility for administering ERISA, should be given "considerable weight." *Nord Comm. Mental Health Center v. County of Lorain*, 638 N.E.2d 623, 625 (Ohio Ct. App. 1994), applying *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).

8

the process of conforming its organization and operations, and in agreeing by contract to perform activities in accordance with strict regulatory standards provided in the statute. Such is the case here. We also note that in the case of community action agencies obtaining government funding in Alabama, the state scheme for statutory or regulatory control does not include regulation of community action agencies' actions as employers in providing employee benefits for their own employees.

(Def. Ex. 6, Memorandum Brief at p. 8).

The Secretary was apparently impressed with and therefore gave greater weight to the agency's contractor-like relationship with the state as well as its private-sector-like relationship with its own employees and gave less weight to the agency's sources of funding and its objectives. In particular, with respect to the CAA's relationship with its own employees, the Secretary pointed out the danger in improperly classifying CAA's (such as the PCAC) as governmental entities for purposes of the present exemption. For example, if the CAA does not satisfactorily perform its obligations under the Grant Agreement, the state could terminate the Grant and enter into an identical Grant Agreement with a second CAA. (Def. Ex. 6, Memorandum Brief at p. 6). In that event, given that the initial CAA lacks the power to tax,[7] it would unable to meet its ongoing financial obligations – including the obligation to fund its employee benefit plan. (Def. Ex. 6, Memorandum Brief at p. 6); *see also McGraw v. Prudential Ins. Co. of Am.*, 137 F.3d 1253, 1257 (10th Cir. 1998) (recognizing that "[d]espite ERISA's regulatory and remedial sweep, Congress did not include public or governmental benefit plans within its reach believing, in part, state and local government's *ability to tax*, would enable them to operate employee benefit systems that would 'avoid the pitfalls of underfunding'") (quoting *Hightower v. Texas Hosp. Assn*,

---

[7] The Grant Block Agreement between PCAC and ADECA specifically provides that "[i]t is agreed that the terms and commitments contained herein shall not be constituted as a debt of the State of Alabama..." (Grant Agreement at ¶ 19).

65 F.2d 910, 914 (2d Cir. 1987) (emphasis added). Based on the Secretary's interpretation of the very same Alabama code provisions under similar circumstances and its own analysis, the court is convinced that the ERISA's governmental plan exemption does not apply to the plan adopted by the PCAC.

###    B.    Are Plaintiffs' Claims of the Type Which Are Preempted?

Having established that PCAC's plan is a non-exempt "employee benefit plan," any and all claims that "relate to" the plan are preempted. *See* 29 U.S.C. § 1444(a) (providing ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title. . ."). For the purposes of preemption, a law "relates to" an employee benefit plan if it "'has a connection with or reference to such a plan.'" *New York Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 115 S. Ct. 1671, 131 L. Ed. 2d 695 (1995) (*quoting Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97, 103 S. Ct. 2890, 2900, 77 L. Ed. 2d 490 (1983)). Although the term "relates to" is quite broad, the Supreme Court has cautioned that it should not be "taken to extend to the furthest stretch of its indeterminancy." *See New York Conf. of Blue Cross & Blue Shield Plans*, 514 U.S. at 655. Indeed, "[s]ome state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Shaw*, 463 US. at 100 n. 21.

Plaintiffs argue that their state law claims are not preempted because they "make no claims alleging entitlement to benefits or necessitating reference to the policy provisions . . ." (Motion to Remand at ¶ 34). In support of their position, plaintiffs cite the court to *Mehaffey v. Boston Mutual Life Ins. Co.*, 31 F. Supp. 2d 1329 (M.D. Ala. 1998), in which the plaintiffs, a group of school teachers, were voluntary participants in their employer's

"cafeteria plan." *Mehaffey*, 31 F. Supp. 2d at 1331. Pursuant to the plan, the employer contributed $600.00 per month and the participants could use the contribution for a variety of purposes, including health insurance. *Id.* After meeting with an agent of Boston Mutual Life Insurance Company ("Boston Mutual"), the plaintiffs decided to purchase a Boston Mutual group health insurance policy. *Id.* On July 1, 1997, their employer forwarded a check in the amount of $2,912.87 to the Boston Mutual agent, representing the initial premium for the group health policy. *Id.* A month later, in August of 1997, the agent informed plaintiffs that, based on information provided by certain applicants within the group, Boston Mutual applied a twenty percent "rate up." *Id.* The plaintiffs decided not to accept the Boston Mutual policy and subsequently learned that, despite the agent's representations that the group health policy was effective as of July 1, 1997, the policy was never issued. *Mehaffey*, 31 F. Supp. 2d at 1132.

As a result of the insurance agent's alleged actions, the plaintiffs' brought suit in state court against the insurance agent, his agency and Boston Mutual, alleging fraud in the inducement and negligence in connection with the sale and purchase of the group health policy. *Id.* at 1331. The defendants timely removed the action to federal district court on the basis that plaintiffs' claims "relate to" an employee benefit plan and, as such, were preempted by ERISA. *Id.* The plaintiffs sought remand to state court on grounds that their state law claims could not "relate to" an ERISA plan because the Boston Mutual policy was never issued. *Id.* at 1334. After reviewing a line of Eleventh Circuit case law addressing the preemption of fraud-type claims, the court reasoned:

> When the claims are based on a denial of benefits under the policy or require some construction of the plans provisions, those claims likely will "relate to" the plan. Conversely, when the claims do not allege entitlement to benefits

11

or necessitate any reference to the policy's provisions, those claims likely will
fall outside ERISA's preemptive scope.

*Id.* at 1135. (*citing Englehardt v. Paul Revere Life Ins. Co.*, 139 F.3d at 1346 (11th Cir. 1998); *Hall v. Blue Cross/Blue Shield of Alabama*, 134 F.3d 1063, 1065 (11th Cir. 1998)). Emphasizing that "[t]he absence of a policy is an essential difference between the present case and those cases where courts have found preemption of fraudulent inducement claims," the court held that plaintiffs' claims did not "relate to" an ERISA plan and, therefore, remanded the action to state court. *Id.*

The action, however, is not *Mehaffey*. First, in contrast to the plaintiffs in *Mehaffey*, the plaintiffs in the present action do not dispute the existence of a valid universal life insurance policy. The plaintiffs also do not dispute that the purchase of "incidental benefits," such as the life insurance in question, is specifically authorized by PCAC's employee benefits plan. (Def. Ex. 2, "Prototype Plan" at ¶ 11.01). The relevant provisions of the "Prototype Plan" provide as follows:

> The Trustee will not purchase any incidental life insurance benefit for any Participant prior to an allocation to the Participant's Account. At an insured Participant's written direction, the Trustee will use all or any portion of the Participant's nondeductible voluntary contributions, if any, to pay insurance premiums covering the Participant's life . . . Each application for a policy, and the policies themselves, must designate the Trustee as sole owner, with the right reserved to the Trustee to exercise any right or option contained in the policies, subject to the terms and provisions of this agreement . . . The Trustee will charge the premiums on any incidental benefit insurance contract covering the life of a Participant against the Account of that Participant. The Trustee will hold all incidental benefit insurance contracts issued under the Plan as assets of the Trust created under the Plan.

(Def. Ex. 2, "Prototype Plan" at ¶ 11.01). As the above language suggests, the policy of insurance accepted by plaintiffs is part and parcel of the PCAC's employee benefits plan. Therefore, it would be impossible to determine whether the terms of that policy were

12

suppressed, misrepresented or breached without resorting to the written policy and ascertaining the truth of Gambrell's claimed representations. *See Hall*, 134 F.3d at 1065; *c.f. Mehaffey*, 31 F. Supp. 2d at 1135 (noting that plaintiffs' "claims turn on the absence of a policy, not its interpretation"). Accordingly, plaintiffs' state law claims cannot be resolved apart from PCAC's plan and, therefore, those claims "relate to" the plan for purposes of preemption.

Additionally, although not necessary to the conclusion reached above, given the intertwining of pension and welfare components in PCAC's employee benefit plan, the court notes that plaintiffs contention that they "make no claims alleging entitlement to benefits" is not as straightforward as plaintiffs suggest. For instance, plaintiffs allege fraud, breach of contract and recklessness in connection with the purchase of a "retirement plan" that, according to plaintiffs, ultimately turned out to be a simple universal life insurance policy. As noted above, pursuant to the PCAC plan provisions, the life insurance premiums were charged against the voluntary contributions of each plaintiff-participant and, in turn, each plaintiff-participant received a death benefit credit. For this reason, regardless of how their claims are characterized, plaintiffs are essentially arguing that, due to fraud, breach of contract and/or recklessness, their pension accounts were wrongfully depleted. When viewed in this light, plaintiffs are indeed alleging entitlement to benefits under the PCAC's plan and, for this additional reason, plaintiffs' state law claims "relate to" the plan for purposes of preemption.

C.  **Are Plaintiff's Claims against Gambrell and Gambrell Financial Preempted?**

While there is little doubt that Alexander Hamilton, as a fiduciary responsible for paying or reviewing death benefits under the plan, is an ERISA entity, *see Englehardt v. Paul Revere Life Ins. Co.*, 139 F.3d 1346, 1352 (11th Cir. 1998), plaintiffs argue that the state law claims asserted against Gambrell and Gambrell Financial are not subject to ERISA preemption under the Eleventh Circuit's decision in *Morstein v. National Ins. Servs.*, 93 F.3d 715 (11th Cir. 1996). In *Morstein*, the Eleventh Circuit partially overruled its decision in *Belasco v. W.K.P. Wilson & Sons, Inc.*, 833 F.2d 277 (11th Cir. 1987), which had extended ERISA's preemption doctrine to claims against insurance agents marketing ERISA plans. The *Morstein* court found that the plaintiff's claims against an independent insurance agent and his agency were not preempted under ERISA, since the independent agent and his agency were non-ERISA entities. *See Morstein*, 93 F.3d at 722. The court's conclusion hinged on the status of the defendants–the broker and the independent insurance agency–as non-ERISA entities. *See id.* The court identified the ERISA entities as "the employer, the plan, the plan fiduciaries, and the beneficiaries under the plan." *Id.* at 722. The court held that state law claims brought against non-ERISA entities are not preempted by ERISA when they do not affect relations among principal ERISA entities.

Reading *Morstein* in the context of its facts, it appears that the Eleventh Circuit's determination that the independent insurance brokerage and its agents were not ERISA entities was based on the fact that, under Georgia law, independent agencies are generally considered agents of the *insured*, not the insurer. *Id.* at 717 n. 2. This is true even though the brokerage and its agent were authorized to write policies for the ERISA plan insurance

14

companies. *See id.* In the present matter, Alexander Hamilton is an ERISA fiduciary, and Gambrell and Gambrell Financial, according to plaintiff, were acting as licensed agents of Alexander Hamilton. (Compliant at ¶ 3 ). Plaintiffs' theory of vicarious liability, therefore, takes their claims against Gambrell and Gambrell Financial outside the *Morstein* analysis.[8] Other courts have distinguished *Morstein* on similar facts. *See Culpepper v. Protective Life Ins. Co.*, 938 F. Supp. 794, 801 (M.D. Ala. 1996) (holding *Morstein* does not apply when "the Plaintiff asserts claims against the insurance company itself and agents of the insurance company" because such "Defendants clearly qualify as 'ERISA entities'"); *see also Stoudemire v. Provident Life and Accident Ins. Co.*, 24 F. Supp. 2d 1252, 1258 (distinguishing *Morstein* on grounds that insurance salesperson was agent of ERISA entity as opposed to an "independent agent"). Accordingly, the court finds that plaintiffs' claims against Gambrell and Gambrell Financial are also preempted.

## V.     Conclusion

For the foregoing reasons, the plaintiffs' state law claims are completely preempted by ERISA, giving this court federal question jurisdiction. Accordingly, the plaintiffs' Motion to Remand will be **DENIED** by an appropriate order in conformity with this opinion.

---

[8] In paragraph 9 of the Complaint, plaintiffs make a vague allegation that Gambrell was also acting as an "independent financial advisor to plaintiffs." (Complaint at ¶ 9). To the extent plaintiffs seek redress for actions outside the scope of Gambrell's agency, the court will exercise its supplemental jurisdiction over such claims. *See* 28 U.S.C. 1367(a).

15

Done, this **30th** of January, 2001.

Edwin Nelson
United States District Judge