

## United States District Court
## Northern District of Alabama
## Western Division

Eloise Dickerson, et al.,           ]
                                    ]
        Plaintiff(s),               ]
                                    ]
    vs.                             ]    CV-00-N-2281-W
                                    ]
Alexander Hamilton Life Insurance   ]
Company of America, et al.,         ]
                                    ]
        Defendant(s).               ]
                                    ]

**ENTERED**

**MAY 3 1 2001**

### Memorandum of Opinion

### I.    Introduction

The court has for consideration the motion of defendants, Alexander Hamilton Life

Ins. Co. ("Alexander Hamilton), Dean A. Gambrell, Sr. ("Gambrell") and Gambrell Financial

Group, Inc. ("Gambrell Financial") to dismiss plaintiffs' first amended complaint for failure

to state a claim upon which relief may be granted. The motion has been briefed by the

parties and is ripe for decision. Upon due consideration, the motion will be denied.

### II.    Procedural Background

This action was originally brought in the Circuit Court of Pickens County, Alabama,

and removed to this court on August 16, 2000, on the basis that plaintiffs' state law claims

were preempted by the Employee Retirement Income Security Act of 1974. *See* 29 U.S.C.

§ 1001, *et. seq.* ("ERISA"). By order entered January 30, 2001, this court held that plaintiffs'

state law claims were indeed preempted and directed plaintiffs to amend the complaint to

frame their claims in terms of ERISA (Doc. # 16). On February 14, 2001, the plaintiffs filed



24).   Finally, in Count III of the amended complaint, plaintiffs allege that defendants breached the parties contractual agreement by failing to provide a substantial tax free retirement plan with a large death benefit. (*Id.* at 25-29).  As a result of the defendants' alleged actions and/or inactions, the plaintiffs seek to recover benefits to which they are entitled under the terms of the plan had it been as allegedly represented. (*Id.* at ¶ 18); ERISA § 502(a)(1)(B).[2]

## IV.     Standard of Review

A Rule 12(b)(6) motion tests the legal sufficiency of the Complaint. *Brooks v. Blue Cross & Blue Shield*, 116 F.3d 1364, 1368 (11th Cir. 1997).   The court may dismiss a complaint only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). For purposes of ruling on a motion to dismiss, the court will accept as true all well-pleaded factual allegations and view them in a light most favorable to the non-moving party. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Burch v. Apalachee Community Mental Health Servs.*, 840 F.2d 797, 798 (11th Cir. 1988) (en banc).  This standard imposes an "exceedingly low" threshold on the nonmoving party in order to survive a motion to dismiss for failure to state a claim that reflects the liberal pleading requirements set forth in the Federal Rules of Civil Procedure. *See Ancata v. Prison Health*

---

[2]ERISA § 502(a)(1)(B) provides:

[a] civil action may be brought –
    (1)     by a participant or beneficiary –
         (B)     to recover benefits due to him under the terms of his plan, or to clarify his rights to future benefits under the terms of the plan. . . .

their first amended complaint. (Doc. # 17). The defendants moved to dismiss the amended complaint on February 27, 2001. (Doc. #18).

## III. Allegations of the Amended Complaint

The plaintiffs are citizens of the state of Alabama, employees of the Pickens County Action Committee ("PCAC"), and participants in PCAC's employee benefit plan ("pension plan"). Defendant Alexander Hamilton is a non-resident insurance company with its principal place of business in the state of Michigan. Defendant Gambrell is a resident of the state of Alabama, a licensed agent of Alexander Hamilton, and an employee/representative of defendant Gambrell Financial. (*Complaint* at ¶¶ 1-4). The allegations of the amended complaint arise from the sale of a policy of life insurance by defendants to plaintiffs.[1]

In Count I of the amended complaint, plaintiffs allege that, in reliance upon certain representations made by the defendants, they purchased a "retirement plan" that would supposedly provide a comfortable, tax free retirement income with an accompanying death benefit. However, according to the plaintiffs, the "retirement plan" purchased turned out to be a simple universal life insurance policy. (*Id*. at ¶¶ 11-17). In Count II of the amended complaint, plaintiffs contend that the defendants are fiduciaries and, as such, breached ERISA's fiduciary provisions by misrepresenting and/or suppressing pertinent information in order to induce plaintiffs into purchasing the so called "retirement plan." (*Id*. at ¶¶ 18-

---

[1] The life insurance policies in question were purchased, at the plaintiffs' direction, by the Plan Trustee. The purchase was made pursuant to certain provisions of PCAC's pension plan which permit Plan participants, if they so choose, to divert a portion of their voluntary contributions to purchase an "incidental" life insurance benefit. The Plan Trustee holds all incidental benefit insurance contracts issued under the Plan as assets of the Trust created under the Plan. *See Memorandum of Opinion* (Doc. # 15, entered Jan. 30, 2001).

*Servs.*, 769 F.2d 700, 703 (11th Cir. 1985); *see also Brooks*, 116 F.3d at 1369 (providing that Rule 12(b)(6) motions are "viewed with disfavor and rarely granted").

## V.     Discussion

The defendants take the position that the allegations of the amended complaint are merely a "repackaging" of plaintiffs' preempted state law claims and, as such, are not cognizable under ERISA. Specifically, the defendants maintain that Counts I and III of the complaint are due to be dismissed because, even assuming defendants made the representations as alleged, the terms of PCAC pension plan cannot be modified by oral statements. As to Count II of the complaint, the defendants argue that, because they are not fiduciaries with respect to the disclosure of plan information, they cannot be held responsible for breach of fiduciary duty. Each of defendants' contentions will be addressed in turn.

### A.     Counts I and III

As noted above, in Counts I and III of the amended complaint, plaintiffs allege that defendants misrepresented that they would provide, and/or breached the parties contractual agreement to provide, a "retirement plan" that would provide a "tax free" retirement income. Although characterized as a claim for "wrongful denial of benefits," plaintiffs have not suffered, at least from a commonsense perspective, a "denial" of benefits under the PCAC plan. Rather, in reliance upon the defendants' alleged representations, the plaintiffs diverted a portion of their voluntary contributions into an ostensible second "retirement plan" which ultimately turned out to be a simple flexible life insurance policy. For this reason, the allegations asserted in Counts I and III of the amended complaint are

4

perhaps more appropriately construed as an effort to clarify rights to future benefits under the terms of the PCAC plan. *See* § 502(a)(1)(B). According to defendants, however, regardless of how their claims are couched, the plaintiff-participants' rights to plan benefits are governed exclusively by the plan documents.

In *Glass v. United of Omaha Life Ins. Co.*, 33 F.3d 1341, 1347 (11th Cir. 1994), the Eleventh Circuit recognized that while ERISA is a "comprehensive" federal welfare benefit regulatory scheme, the statute has "gaps" that Congress expected courts to fill with "a federal common law of rights and obligations under ERISA-regulated plans." *Glass*, 33 F.3d at 1347 (quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 56, 107 S. Ct. 1549, 1557, 95 L. Ed. 2d 39 (1987)). In filling these "gaps," this Circuit "[h]as created a very narrow common law doctrine under ERISA for equitable estoppel" when the provisions of the plan are at issue. *Id.* at 1347. Equitable estoppel is only available when: (1) the provisions of the plan at issue are ambiguous, and (2) representations are made which constitute an oral interpretation of the ambiguity. *Id.* Stated differently, equitable estoppel is not available for unambiguous written plans or oral modifications of the plan. *Id.* (citing *Alday v. Container Corp. of America*, 906 F.2d 660, 666 (11th Cir. 1990)).

Applying the foregoing principles to the case at bar, without the benefit of PCAC's employee benefit plan and, in particular, those provisions permitting participants to use a portion of their voluntary contributions to purchase the "incidental" insurance benefits at issue, it would be premature, if not impossible, for the court to make a determination as to whether the representations allegedly made by defendants constitute oral modifications of an unambiguous plan provision. Stated differently, at this juncture, the court cannot say that

5

plaintiffs can prove no set of facts to support a § 502(a)(1)(B) claim. Accordingly, the motion to dismiss Counts I and III of the complaint will be denied.

### B.    Count II

In Count II of the amended complaint, plaintiffs allege that the defendants are fiduciaries and, as such, breached ERISA's fiduciary provisions by misrepresenting and/or suppressing pertinent information in an effort to induce plaintiffs into purchasing an ostensible "retirement plan." In response, the defendants maintain that they are not fiduciaries with respect to the disclosure of plan information and, therefore, cannot be held responsible for breach of fiduciary duty.

ERISA provides that a "fiduciary shall discharge his duties with respect to a plan solely in the interest of participants and beneficiaries." 29 U.S.C. § 1104(a)(1). Personal liability may be imposed on "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon [ERISA] fiduciaries." 29 U.S.C. § 1109. A person is an ERISA fiduciary if:

> (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). In keeping with ERISA's remedial purpose, courts have construed the term "fiduciary" liberally. *See Donovan v. Mercer*, 747 F.2d 304, 308 (5th Cir. 1984); *American Federation of Unions, Local 102 Health & Welfare Fund v. Equitable Life*

6

*Assurance Soc.*, 841 F.2d 658, 662 (5th Cir. 1988); *Farm King Supply, Inc. Integrated Profit Sharing Plan & Trust v. Edward D. Jones & Co.*, 884 F.2d 288, 192 (7th Cir. 1989).  However, as the Eleventh Circuit has recognized, "even a broad construction has limits." *Chapman v. Klemick*, 3 F.3d 1508, 1512 (11th Cir. 1993), *cert. denied*, 510 U.S. 1165 (1994).  The test for ascertaining fiduciary status is objective, one's subjective belief as to whether he or she was acting as a fiduciary cannot be the controlling factor.  *See Donovan*, 747 F.2d 304, 308 n.4.

Apparently conceding that defendants are not fiduciaries with respect to ERISA's disclosure provisions, 29 U.S.C. §§ 1021 - 1031, the plaintiffs nevertheless maintain that defendants enjoy fiduciary status by virtue of rendering "investment advice" to the plan within the meaning of § 3(21)(A)(ii) of ERISA.  *See Plumb v. Fluid Pump Servs.* Inc., 124 F.3d 849, 854 (7th Cir. 1997) (ERISA recognizes that a person may be a fiduciary for some purposes but not for others).  The term "investment advice" is somewhat narrowed by a Department of Labor ("DOL") regulation which provides:

> (1) A person shall be deemed to be rendering "investment advice" to an employee benefit plan, within the meaning of section 3(21)(A)(ii) of the Employee Retirement Income Security Act of 1974 (the Act) and this paragraph, only if:
>
> (i) Such person renders advice to the plan as to the value of securities or other property, or makes recommendation as to the advisability of investing in, purchasing, or selling securities or other property; and
>
> (ii) Such person either directly or indirectly (e.g., through or together with any affiliate) --
>
> (A) Has discretionary authority or control, whether or not pursuant to agreement, arrangement or understanding, with

respect to purchasing or selling securities or other property for the plan; or

(B) Renders any advice described in paragraph (c)(1)(i) of the section on a regular basis to the plan pursuant to a mutual agreement, arrangement or understanding, written or otherwise, between such person and the plan or a fiduciary with respect to the plan, that such services will serve as a primary basis for investment decisions with respect to plan assets, and that such persons will render individualized investment advice to the plan based on the particular needs of the plan regarding such matters as, among other things, investment policies or strategy, overall portfolio composition, or diversification of plan investments. . . .

29 C.F.R. § 2510.3-21.  Moreover, according to the DOL, 29 C.F.R. 2510.3-21(c) is equally

applicable in determining whether a person renders "investment advice" to participants

and beneficiaries of participant-directed individual account pension plans ("405(c) Plans").

29 C.F.R. § 2509.96-1 (Interpretive Bulletin); 29 C.F.R. § 2550.404c-1 (describing the type of

plans that qualify as § 404(c) plans).[3]

Based on the submissions before the court, it is unclear as to whether the defendants

rendered "investment advice for a fee" and, therefore, were fiduciaries with respect to the

sale and purchase of incidental life insurance benefits.  It is also unclear as to whether the

defendants, as fiduciaries or non-fiduciaries, materially misled those to whom the duties of

loyalty and prudence are owed. *See Varity Corp. v. Howe*, 516 U.S. 489 (1996).  For these

reasons, the court cannot conclude that plaintiffs can prove no set of facts to support a §

---

[3]The court expresses no opinion as to whether the PCAC plan meets the requirements of a 405(c) plan.

502(a)(3)[4] claim.  Accordingly, the motion to dismiss Count II of the complaint will be denied.

The issues raised in the motion to dismiss would perhaps be more appropriately dealt with in the context of a properly presented motion for summary judgment.

Done, this ___31___ of May, 2001.

Edwin L. Nelson
United States District Judge

---

[4]The court notes that, while the complaint purports to seek benefits pursuant to § 502(a)(1)(B) for an alleged breach of fiduciary duty, no such relief is available.  A civil action for breach of fiduciary duty must be brought pursuant to § 502(a)(2) (limited to relief for the plan) or § 502(a)(3) (equitable relief for plan participants). Monetary damages, such as extra-contractual and punitive damages, are not recoverable under § 502(a)(3) as equitable relief. *See Mertens v. Hewitt Assocs.*, 508 U.S. 248 (1993).  Accordingly, Count II of the complaint will be construed as a claim for § 502(a)(3) equitable relief.